1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANGELO MELENDEZ,

11              Petitioner,              No. 2:11-cv-2895 MCE EFB P

12        vs.

13   LELAND SCOTT McEWEN,

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16        Petitioner is a state prisoner proceeding without counsel on a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  He challenges a 2010 judgment of conviction entered

18   against him in the San Joaquin County Superior Court on charges of making criminal threats,

19   possession of a firearm by a felon, and possession of ammunition by a felon.  He seeks relief on

20   the grounds that his trial counsel rendered ineffective assistance, the prosecutor committed

21   prejudicial misconduct, and the cumulative effect of errors at his trial violated his right to due

22   process.  Upon careful consideration of the record and the applicable law, the undersigned

23   recommends that petitioner's application for habeas corpus relief be denied.

24   ////

25   ////

26   ////

1

## I.   Background[1]

The prosecution charged defendant with 10 offenses allegedly occurring on May 16, 2009: (1) attempted murder of police officer Emiliano Rincon (§§ 664, 187); (2) attempted murder of Sylvia Gaines (§§ 664, 187); (3) shooting a firearm at an occupied motor vehicle (§ 246); (4) shooting a firearm from a vehicle at Officer Rincon (§ 12034, subd. (c)); (5) shooting a firearm from a vehicle at Sylvia Gaines (§ 12034, subd. (c)); (6) assault with a firearm on Sylvia Gaines (§ 245, subd. (a)(2)); (7) assault with a semiautomatic firearm on Officer Rincon (§ 245, subd. (d)(2)); (8) criminal threats against Sylvia Gaines (§ 422); (9) felon in possession of a firearm (§ 12021, subd. (a)(1)); and (10) felon in possession of ammunition (§ 12316, subd. (b)(1)).  Sentencing enhancement allegations included personal use of a firearm (§ 12022.5, subd. (a)), two prior serious felony convictions – an assault with a firearm from 1999 and domestic violence from 2008 (§§ 667, subds.(a), (d), 1170.12, subd. (b)) – and a prior prison term for the 1999 assault (§ 667.5, subd. (a)).

The trial court granted defendant's motion for judgment of acquittal after trial on count 4.  (§ 1118.1.)

The evidence adduced at trial included the following:

The incidents that resulted in the charges occurred around 1:30 a.m. on May 16, 2009.  Before that, defendant spent several hours with his cousin, Regence Gaines.[2]  They drove around, made three stops at liquor stores, picked up defendant's girlfriend around midnight, and around 1:30 a.m. stopped to greet another cousin, Howard Gaines aka Ray Ray.  Regence testified defendant drank "a couple" of 24-ounce cans of malt liquor and snorted an unspecified amount of cocaine during the several-hour time period.

Regence testified defendant and Howard started to argue.  Defendant pulled a sawed-off .22 caliber rifle from the front passenger side of Regence's car and walked back to Howard.  From what he could see in the dark, it appeared to Regence that defendant held the rifle in his right hand at his side.

Howard's mother, Sylvia Gaines, lived nearby.  She testified she heard gunshots outside and heard someone ask, "you trying to shoot me in my back?"  She looked outside and saw more than 10

---

[1]  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

[2]  Because several witnesses share the Gaines surname, we will refer to them by first name for convenience and clarity.

people in a "bunch."  She went outside, where she saw her son Howard[3] and defendant (Sylvia's ex-husband's nephew) arguing "neck to neck" and "going around in circles."  She stepped between them.  She saw that defendant was holding a gun about two feet long, pointed toward the ground.  When asked if defendant said anything to her, Sylvia testified, "Words w[ere] going back and forth, and then he said, 'I don't give a fuck about being kin.'"  When asked if defendant was talking to her or Howard, Sylvia testified, "I have no idea.  We both w[ere] standing there."

Sylvia testified that Howard started to respond, but she grabbed him, covered his mouth, and whispered in his ear to be quiet because, "He [defendant] looks like he's high."  Defense counsel objected, and the trial court overruled the objection but immediately instructed the jury, "The jury will consider that, if at all, for a limited purpose, and that is to explain the witness's actions, not for the truth of the notion that somehow the defendant was high."

When asked on cross-examination if she ever saw defendant high before, Sylvia said, "I seen [sic] Miguel [defendant] – like right now, Miguel is fine.  He looks like Miguel.  That night Miguel's eyes were like beamin.'"  Sylvia explained by "beamin'" she meant his eyes were "just big" – "his eyes and pupils like he's on something."  Sylvia has previously seen people high.

Sylvia testified that, after she told Howard to be quiet, "some people were pulling me.  I don't know who they were, but they were pulling me and I turned around and he [defendant] had the gun up pointing."  The gun was pointing at Sylvia and Howard.  Sylvia said she would call 911.  Someone called for defendant to get in the car.  Defendant said "I'll be back," and then he got in the car and left.  A police officer testified that Sylvia reported defendant had said he would come back and "kill all you motherfuckers"; Sylvia denied having reported that specific phrase; she did, however, testify that defendant had said he would be back and was "cussing."  Sylvia testified she was shocked and "a little scared" that defendant pointed the gun in her direction. She still considered him her nephew despite her divorce from her uncle.

After defendant got into the car, Sylvia heard gunshots but did not know where they came from.  They seemed to come "from all over."  She called 911.  Police Officer Emiliano Rincon responded

---

[3]  On direct examination, Sylvia referred to her son Howard as "another party."  On cross-examination, she admitted the other party was indeed Howard, and that he was the one she heard say, "you trying to shoot me in my back?"  She testified she did not want to "involve anybody."

in a patrol car.  Rincon testified that, as he sat in his car speaking to Sylvia through the window, a black Mercedes drove by, and Rincon heard several gunshots that appeared to come from that car. The Mercedes drove away, hit a truck, and stalled.  After the car stalled, defendant fled on foot.

Regence testified he was originally charged as a codefendant in this case, but he reached an agreement with the prosecution to testify truthfully against defendant in exchange for a stipulated state prison term of 16 months on a charge of letting someone discharge a gun from his car, as opposed to a potential life sentence on the original charges.

Defendant's fingerprints were found on the Mercedes.

The defense did not call any witnesses.

The jury found defendant guilty on counts 8, 9, and 10 (criminal threats and felon in possession of a gun and ammunition).  The jury found defendant not guilty on the remaining counts.

In a bifurcated bench trial, the trial court found true the allegations of two prior serious felony convictions and one prior prison term.

The trial court sentenced defendant, under the three strikes law (§ 667, subds.(b)-(I)), to a term of 25 years to life on count 8 (criminal threats), concurrent terms of 25 years to life on counts 9 and 10 (felon in possession of gun and ammunition), plus consecutive terms of four years for use of a firearm (§ 12022.5), five years for each of the two prior serious felony convictions (§ 667, subd. (a)), and three years for the prior prison term (§ 667.5). The total sentence was 42 years to life.[4]

Dckt. No. 12 at 4-8.

Petitioner appealed his judgment of conviction to the California Court of Appeal for the Third Appellate District.  Dckt. No. 12, Ex. A.  Therein, he claimed that: (1) his trial counsel rendered ineffective assistance in failing to request a jury instruction on voluntary intoxication

---

[4]  As noted by the People, the reporter's transcript contains a typographical error, indicating the total aggregate term was "22 years to life."  The sentences listed in the reporter's transcript add up to 42 years, not 22 years, and the abstract of judgment correctly states the total sentence as "42 YEARS TO LIFE."  The clerk's transcript prevails.  (*People v. Smith* (1983) 33 Cal.3d 596, 599 [record that is in conflict or discrepancy or inconsistency will be harmonized if possible; if not possible, the circumstances of each particular case determine whether one portion of the record should prevail as against contrary statements in another part of the record].)

1   with respect to the charge of making criminal threats; (2) the prosecutor committed prejudicial

2   misconduct; (3) a prior prison term sentence enhancement should be stricken as duplicative; and

3   (4) cumulative error at his trial violated his right to due process.  *Id.*  The Court of Appeal struck

4   the sentence enhancement but otherwise affirmed petitioner's judgment of conviction.  *Id.*

5         Petitioner subsequently filed a petition for review, in which he raised the same claims

6   that he raised on direct appeal.  Resp't's Lodg. Doc. 13.  That petition was summarily denied.

7   *Id.*

8         Petitioner subsequently filed two petitions for writ of habeas corpus in the California

9   Superior Court.  Resp't's Lodg. Docs 15, 17.  Those petitions were denied on procedural

10  grounds.  Resp't's Lodg. Docs. 16, 18.

11        Petitioner initiated the instant action by filing a petition for writ of habeas corpus in this

12  court on October 31, 2011.  Respondent filed an answer on March 5, 2012, and petitioner filed a

13  traverse on April 6, 2012.

14  **II.   Analysis**

15      **A.  Standards for a Writ of Habeas Corpus**

16        An application for a writ of habeas corpus by a person in custody under a judgment of a

17  state court can be granted only for violations of the Constitution or laws of the United States.  28

18  U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

19  application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

20  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

21  2000).

22        Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

23  corpus relief:

24          An application for a writ of habeas corpus on behalf of a
       person in custody pursuant to the judgment of a State court shall

25         not be granted with respect to any claim that was adjudicated on
       the merits in State court proceedings unless the adjudication of the

26         claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[5] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

---

[5] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

1   the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

2   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

3   of the state court's decision."  *Harrington v. Richter*, 562 U.S.___,___, 131 S. Ct. 770, 786

4   (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a

5   condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

6   state court's ruling on the claim being presented in federal court was so lacking in justification

7   that there was an error well understood and comprehended in existing law beyond any possibility

8   for fairminded disagreement."  *Richter*,131 S. Ct. at 786-87.

9       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

10  court must conduct a de novo review of a habeas petitioner's claims.  *Delgadillo v. Woodford*,

11  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

12  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

13  2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

14  considering de novo the constitutional issues raised.").

15      The court looks to the last reasoned state court decision as the basis for the state court

16  judgment.  *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

17  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

18  previous state court decision, this court may consider both decisions to ascertain the reasoning of

19  the last decision.  *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

20  a federal claim has been presented to a state court and the state court has denied relief, it may be

21  presumed that the state court adjudicated the claim on the merits in the absence of any indication

22  or state-law procedural principles to the contrary."  *Richter*, 131 S. Ct. at 784-85.  This

23  presumption may be overcome by a showing "there is reason to think some other explanation for

24  the state court's decision is more likely."  *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

25  803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to

26  support its conclusion, a federal habeas court independently reviews the record to determine

7

1   whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

2   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

3   review of the constitutional issue, but rather, the only method by which we can determine

4   whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.

5   Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

6   there was no reasonable basis for the state court to deny relief."  *Richter*, 131 S. Ct. at 784.

7          However, the Ninth Circuit has held that when it is clear that a state court has not reached

8   the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does

9   not apply and a federal habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860;

10   *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056

11   (9th Cir. 2003).[6]

12      **B.  Petitioner's Claims**

13          **1.  Ineffective Assistance of Counsel**

14          In his first ground for relief, petitioner claims that his trial counsel rendered ineffective

15   assistance in failing to request a jury instruction on voluntary intoxication with respect to the

16   charge of making criminal threats.  Dckt. No. 1 (Pet.) at 4.  He argues that there was "abundant

17   evidence" that his voluntary intoxication prevented him from forming the required intent that his

18   statement to Sylvia Gaines, "I don't give a fuck about being kin" be understood as a threat.  *Id.* at

19   4-8.  Petitioner notes that his trial counsel vacillated between attempting to keep out evidence

20   that petitioner was intoxicated and then eliciting testimony that petitioner was intoxicated, and

21   he argues that counsel "never recognized the viable defense provided by voluntary intoxication."

22   *Id.* at 8.  Petitioner argues that his case was "extremely close," as evidenced by the fact that he

23   was acquitted of many of the charges against him, and he argues that, for this reason, "it is

24

25          [6]  The United States Supreme Court has recently granted certiorari in a case apparently to
     consider this issue.  *See Williams v. Cavazos*, 646 F.3d 626, 639-41 (9th Cir. 2011), *cert. granted*

26   *in part*, ___U.S.___, 132 S. Ct. 1088 (2012).

reasonably probable petitioner would no [sic] have been convicted of criminal threats if the jury had been instructed that voluntary intoxication could negate the specific intent that petitioner [sic] words be taken as a threat of great harm." *Id.*

The California Court of Appeal provided the only reasoned decision with respect to this claim. Accordingly, that opinion provides the basis for the state court judgment under AEDPA review. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same grounds."); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002) (federal habeas court must review the "last reasoned decision" by a state court). *See also Williams v. Cavazos*, 646 F.3d 626 (9th Cir. 2011) ("We therefore continue to 'look through' the state supreme court's denial of discretionary review to the last reasoned state court decision . . ."). The Court of Appeal denied petitioner's claim of ineffective assistance of counsel, reasoning as follows:

> Defendant contends his trial counsel was ineffective in failing to request a jury instruction that presented the jury with the option of finding that voluntary intoxication prevented defendant from having the specific intent to threaten under section 422.[7] We disagree.
>
> Defendant acknowledges the trial court did not have any sua sponte duty to instruct on voluntary intoxication. (*People v. Saille* (1991) 54 Cal.3d 1103, 1120; *accord, People v. San Nicolas* (2004) 34 Cal.4th 614, 669.) Even if the defendant requests the instruction, the trial court is not required to give it unless there is substantial evidence that (1) defendant was intoxicated, and (2) that the intoxication affected his actual formation of specific intent. (*People v. Williams* (1997) 16 Cal .4th 635, 677; *see also*, § 22

---

[7] Section 422 provides, "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison . . . ."

[evidence of intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, not to negate capacity to form intent].)

Defendant bears the burden to show ineffective assistance of counsel.  (*People v. Gray* (2005) 37 Cal.4th 168, 207 (*Gray*).)  To succeed, defendant must show trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688 [80 L.Ed.2d 674, 678–679] (*Strickland*); *Gray*, supra, 37 Cal.4th at pp. 206–207.)  Defendant must then show a reasonable probability he would have received a more favorable result but for counsel's deficiency.  (*Strickland, supra*, 466 U.S. at p. 687 [80 L.Ed.2d at p. 678]; *Gray, supra*, at p. 207.)

Here, defendant cannot show counsel performed deficiently, much less show prejudice.  Although there was evidence that defendant had consumed 48 ounces of beer and an undisclosed amount of cocaine in the four or five hours before the incident, there was no evidence that the intoxicants affected his actual formation of specific intent.  Defendant did not testify.  Sylvia testified that defendant might be "high," but also that she believed defendant meant his words as a threat – a belief that was evidenced by her warning to Howard and her calling 911.  Being "high" and forming specific intent to commit a crime are not mutually exclusive.  (*See People v. Williams, supra*, 16 Cal.4th at p. 677 [evidence that defendant was "probably spaced out" and "doped up" did not constitute evidence that intoxication had any effect on the defendant's formation of intent].)

Defendant argues that, by the time Regence and defendant picked up defendant's girlfriend around midnight, the condition of both defendant and Regence had "deteriorated to the point that she immediately took over the driving."  However, defendant cites no evidence that the girlfriend had to take over the driving due to the inebriated state of the driver (Regence) or defendant.  Regence testified he has a "high tolerance" for beer, he "tried" the cocaine, and he "let her [the girlfriend] drive."  The jury heard no evidence signaling defendant was incapable of driving.

Defendant compares this case to *People v. Hughes* (2002) 27 Cal.4th 287, where the defendant had alcohol on his breath, "glassy eyes," slightly slurred speech, seemed unsteady but was able to stand, and seemed intoxicated but not drunk.  (*Id.* at p. 317.)  In that case, however, the issue before the Supreme Court was whether a different instruction eviscerated the voluntary intoxication instruction also given by the trial court.  (*Id.* at pp. 340–341.)  The Supreme Court concluded it did not.  (*Ibid.*)  Thus, *Hughes* did not discuss or resolve the question whether substantial evidence to support a voluntary intoxication instruction.

Cases are not authority for propositions not decided therein. (*People v. Scheid* (1997) 16 Cal.4th 1, 17.)

Since there was no evidence that the intoxicants affected defendant's actual formation of specific intent, trial counsel was not deficient for failing to request a voluntary intoxication instruction.  (*People v. Williams, supra*, 16 Cal.4th at p. 677.)

Even assuming the evidence supported a voluntary intoxication instruction, defendant fails to meet his burden to show that there could be no satisfactory tactical explanation for counsel's choice not to request the instruction.  (*Strickland, supra*, 466 U.S. at p. 689 [80 L.Ed.2d at p. 681]; *Gray, supra*, 37 Cal.4th at p. 207 [reviewing court gives deference to trial counsel's tactical choices and will not find ineffective assistance where the record is devoid of counsel's reasoning unless there can be no satisfactory explanation for counsel's choice].)  The defense theory, as argued to the jury, was (1) the only witnesses placing defendant at the scene – Regence and Sylvia – were not credible witnesses, and (2) the words "I don't give a fuck if you're kin" did not constitute a threat.  Trial counsel may have felt that an intoxication defense would have muddied the waters by appearing inconsistent with this theory – not an unreasonable interpretation.  Counsel may also have believed that the argument against intent in effect conceded that the threat was made to Sylvia as charged – a logical belief. That trial counsel made a tactical choice is supported by counsel's initial objection to Sylvia's testimony that defendant looked high; clearly counsel felt the evidence of intoxication was more prejudicial than probative, given that it was clear from Sylvia's reaction to defendant that she believed he specifically intended to not only threaten her and Howard, but also to kill one or both of them.

Defendant argues the defense theory that the words did not constitute a threat runs counter to case law that language must be evaluated in the context of the surrounding circumstances – in this case the gun in defendant's hand.  However, the defense theory was that the only two witnesses who claimed defendant held a gun lacked credibility.  The theory and argument were consistent with each other and with the evidence presented at trial.  Counsel's representation was not ineffective.[8]

---

[8]  Given our conclusion, we need not address the People's argument that instruction on voluntary intoxication would have undermined the defense theory that defendant's words were directed at Howard rather than Sylvia.  Nor need we address defendant's argument that to whom the threat was directed is irrelevant because section 422 criminalizes a threat to harm the victim or the victim's immediate family.  We do note, however, that defendant was charged with threatening to commit a crime which would result in death or great bodily injury to Sylvia, which caused Sylvia to fear for herself and her immediate family.

1    Dckt. No. 12 (hereinafter Opinion) at 6-11.

2        The relevant federal law regarding ineffective assistance of counsel is the following.  To

3    support a claim of ineffective assistance of counsel, a petitioner must first show that, considering

4    all the circumstances, counsel's performance fell below an objective standard of reasonableness.

5    *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  After a petitioner identifies the acts or

6    omissions that are alleged not to have been the result of reasonable professional judgment, the

7    court must determine whether, in light of all the circumstances, the identified acts or omissions

8    were outside the wide range of professionally competent assistance.  *Id*. at 690; *Wiggins v.*

9    *Smith*, 539 U.S. 510, 521 (2003).  The relevant question under AEDPA "is not whether counsel's

10   actions were reasonable, but whether there is any reasonable argument that counsel satisfied

11   *Strickland*'s deferential standard.  *Richter*, 131 S. Ct. at 778 -779.  When evaluating counsel's

12   performance under the first step of *Strickland*, federal courts must apply a strong presumption

13   that counsel "rendered adequate assistance and made all significant decisions in the exercise of

14   reasonable professional judgment."  *Strickland*, 466 U.S. at 690.

15       Second, a petitioner must establish that he was prejudiced by counsel's deficient

16   performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

17   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

18   been different."  *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine

19   confidence in the outcome."  *Id.*

20       The California Court of Appeal concluded that petitioner's trial counsel did not render

21   ineffective assistance in failing to request a jury instruction on voluntary manslaughter because

22   the evidence introduced at trial did not support such an instruction.  After a careful review of the

23   state court record, this court agrees.  The California Court of Appeal quite properly noted that

24   although there was evidence that petitioner might have been "high" on drugs and alcohol at the

25   time of the crimes, there was no evidence that he was so intoxicated he was unable to form

26   intent.  In light of this deficiency in the evidence, a jury instruction on voluntary intoxication

1   would not have been warranted under California law.  *People v. Williams*, 16 Cal.4th 635, 677

2   (1997) (a defendant is entitled to an instruction on voluntary intoxication only when there is

3   substantial evidence of the defendant's voluntary intoxication and the intoxication affected the

4   defendant's "actual formation of specific intent").  Petitioner argues that the fact his girlfriend

5   drove the car indicates he was too intoxicated to drive.  However, Regence Gaines testified that

6   the reason he let petitioner's girlfriend drive was because he (Regence) "had been drinking, and I

7   didn't want to risk it."  RT at 307.  There was no evidence that petitioner's girlfriend drove

8   because petitioner was too intoxicated to drive.  In this regard, Regence Gaines testified that

9   petitioner ingested less alcohol than he did on the night in question.  *Id.* at 353.

10         In addition, as explained by the state appellate court, there were several plausible tactical

11   reasons why petitioner's trial counsel may have chosen to forego an instruction on voluntary

12   intoxication.  Among those reasons was the fact that a defense based on intoxication would

13   arguably have detracted from and even conflicted with counsel's theory of the defense.

14   Reasonable tactical decisions, including decisions with regard to the presentation of the case, are

15   "virtually unchallengeable."  *Strickland*, 466 U.S. at 690.

16         The decision of the California Court of Appeal rejecting petitioner's claim of ineffective

17   assistance of counsel is not "so lacking in justification that there was an error well understood

18   and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at

19   786-87.  Further, petitioner has failed to demonstrate that there is no "reasonable argument that

20   counsel satisfied *Strickland*'s deferential standard."  *Richter*, 131 S. Ct. at 778 -779.

21   Accordingly, he is not entitled to relief on this claim.

22                          **2.  Prosecutorial Misconduct**

23         In his second ground for relief, petitioner claims that the prosecutor committed

24   misconduct when: (1) she failed to warn prosecution witness Sylvia Gaines not to mention a

25   telephone call placed by petitioner to Howard Gaines after the shooting occurred; and (2) when

26   Sylvia did mention the telephone call, she failed to inform the trial court that Sylvia's testimony

was inadmissible hearsay.  Pet. at 4.  Petitioner argues that the prosecutor's conduct was "prejudicial" and that the prejudice was not cured by the trial court's subsequent admonition to the jury that they should not consider Sylvia's testimony about the telephone call.  *Id.*

Petitioner also claims that the prosecutor committed prejudicial misconduct during her closing argument by vouching for the credibility of Sylvia and Regence Gaines.  *Id.* at 12.  He further argues that, to the extent his trial counsel failed to raise a contemporaneous objection when the prosecutor vouched for the credibility of Regence Gaines, counsel rendered ineffective assistance.  *Id.*

The California Court of Appeal rejected all of these arguments, reasoning as follows:

> Defendant claims the prosecutor engaged in misconduct that violated defendant's federal constitutional rights to due process and a fair trial, compelling reversal.  We disagree.
>
> Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.  (*People v. Earp* (1999) 20 Cal.4th 826, 858 (*Earp*).)  Prosecutorial misconduct implicates federal due process when a prosecutor's remarks so infect the trial with unfairness as to make the resulting conviction a denial of due process.  (*Ibid.*)
>
> **A. Phone Calls**
>
> Defendant first claims the prosecutor's failure to admonish witness Sylvia Gaines not to mention any alleged phone call from defendant to Howard (who did not testify), and the prosecutor's failure to advise the court of the potential for hearsay, constituted prejudicial misconduct that was not cured by the trial court's admonition.  We disagree.
>
> **1. Facts**
>
> On cross-examination by defense counsel, Sylvia testified she told the police officers what happened as it involved her.  On redirect examination by the prosecutor, the following exchange occurred:
>
> "Q. Why did you limit it just to what happened involving you?
>
> "A. Because Miguel [defendant] had called and apologized for what he had done.

14

1    "[Defense counsel]: Objection, Your Honor. Can we approach?

2    "THE COURT: Yes, approach the bench.

3    "(Discussion held at bench.)

4    "THE COURT: Overruled."

5    The prosecutor asked if the witness had anything to add.  The trial
     court told the prosecutor to ask another question.  The prosecutor
6    then turned to questions about why Sylvia did not identify for
     police the other people who were in the street that night.  Sylvia
7    said they did not trust the police and did not want to be involved.

8    On recross-examination by defense counsel, Sylvia testified as
     follows:
9
     "Q . . . .  [Y]ou said today for the first time that at some point that
10   [defendant] called you, correct?

11   "A. Yeah.

12   "Q. When did he call you?

13   "A. He didn't call me, he called my son.

14   "Q. He never called you?

15   "A. No.  I didn't tell you he called me.  I said he called my son and
     apologized.
16
     "Q. Okay.  And your son told you this?
17
     "A. Yes.
18
     "Q. And this is Howard?
19
     "A. Howard.
20
     "Q. When did Howard tell you this?
21
     "A. After everything was over with.  First of all, when everything
22   was over with a couple of days after that he was getting phone
     calls from [defendant] with threats at first.
23
     "Q. I want to stop you there.  I'm trying to ask you just about this
24   phone call that you're saying that [defendant] made to Howard
     where he apologized.  This is the first time that you told anybody
25   about this, right?

26   "A. Yeah, that's a couple of days after the incident.

"Q. But [defendant] never called you?

"A. No, I didn't tell you he called me.

"Q. This is all coming from Howard, right?

"A. Yes.

"Q.... [T]here is never a time when [defendant] called you?

"A. No.

"Q. And all this information you're telling us is what Howard told you?

"A. Exactly."

At the next recess (after 40 trial transcript pages of testimony by two police officers), defense counsel said, "I want to ask the Court to strike some of [Sylvia's] testimony about everything her son said about any phone calls, and that's – when she first said it, the way I heard it and we approached the bench, it was different than what she was saying and I ask all that be stricken and the Court admonish the jury that that was improper hearsay evidence."  The trial court indicated it initially overruled the objection due to its impression that defendant spoke directly to Sylvia on the phone, admissible as an exception to the hearsay rule.

After the recess, the trial court instructed the jury: "Ladies and gentlemen, this morning there was testimony by Ms. Gaines about a phone call the defendant allegedly made to her son Howard, also known as Ray Ray, you'll disregard that testimony, and disregard any words allegedly said during that conversation.  That part of her testimony has been stricken from the record."

**2. Analysis**

"A prosecutor 'has the duty to guard against statements by his witnesses containing inadmissible evidence,' and if a prosecutor 'believes a witness may give an inadmissible answer during his examination, he must warn the witness to refrain from making such a statement.' [Citation.]"  (*Earp, supra*, 20 Cal.4th at p. 865.)

Defendant argues the prosecutor knew or should have known it was Howard, not Sylvia, who received phone calls from defendant (according to Sylvia), and no hearsay exception would allow Sylvia to testify about phone calls to Howard.

On this record, we see no indication that the prosecutor knew or should have known Sylvia would bring up hearsay phone calls between defendant and Howard.  Sylvia showed a strong desire to

16

keep Howard out of the case and therefore it is likely she said nothing about the phone calls to the prosecutor before trial.  The prosecutor did not raise the topic at trial.  The witness's initial reference to a phone call came unexpectedly given the surrounding testimony and was not pursued by the prosecutor.

Citing authority that the prosecutor has a duty to correct misleading testimony (*In re Jackson* (1992) 3 Cal.4th 578, 595, *overruled on other grounds in In re Sassounian* (1995) 9 Cal.4th 535, 545), defendant argues the prosecutor misled the trial court and caused a delay between testimony and admonition, by failing to correct the court's initial impression that defendant spoke directly to Sylvia on the phone.  However, this argument assumes the prosecutor actually knew about the phone calls.  Nothing in the record supports this assumption.  Moreover, the defense did not request an immediate admonition.

In any event, we presume the jury followed the trial court's admonition to disregard the testimony about the phone calls.  (*People v. Osband* (1996) 13 Cal.4th 622, 718.)

Defendant argues the admonition was ineffective to "blot[ ] out" of the jurors' minds the "egregious and shocking attack upon the integrity of [defendant]."  (*People v. Schiers* (1971) 19 Cal.App.3d 102, 112.)  We disagree with the suggestion that defendant's apology to his aunt-by-marriage was an egregious and shocking attack on defendant's integrity.  Moreover, any reasonable juror would understand that any testimony from Sylvia regarding a phone call that she had merely heard about was entitled to little, if any, weight.

We see no prejudicial prosecutorial misconduct evidenced in the portion of the trial discussed above.

**B. Claims of Improper Vouching**

Defendant contends the prosecutor improperly vouched for the veracity of witnesses Sylvia and Regence.  We disagree.  As explained below, the record shows permissible argument by the prosecutor regarding the credibility of the witnesses.

"It is misconduct for prosecutors to bolster their case 'by invoking their personal prestige, reputation, or depth of experience, or the prestige or reputation of their office, in support of it.'  [Citation.]  Similarly, it is misconduct 'to suggest that evidence available to the government, but not before the jury, corroborates the testimony of a witness.'  [Citation.]  The vice of such remarks is that they 'may be understood by jurors to permit them to avoid independently assessing witness credibility and to rely on the government's view of the evidence.'  [Citation.]"  (*People v. Bonilla* (2007) 41 Cal.4th 313, 336.)

"However, these limits do not preclude all comment regarding a witness's credibility. "'A prosecutor is given wide latitude during argument.  The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.'"  [Citation.] 'So long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the "facts of the record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief," her comments cannot be characterized as improper vouching.' [Citations.]"  (*People v. Bonilla, supra*, 41 Cal.4th at pp. 336–337.) A prosecutor is not permitted "to place the prestige of her office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial. [Citation.] However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the 'facts of the record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief,' her comments cannot be characterized as improper vouching. [Citations.]"  (*People v. Frye* (1998) 18 Cal.4th 894, 971, *overruled on other grounds* in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  "[T]here is no impropriety in attempting the persuade jurors to draw inferences based on the evidence." (*Id.* at p. 972.)

**1. Vouching for Sylvia Gaines**

Defendant argues the prosecutor improperly vouched for Sylvia's credibility, by saying in closing argument:

"Let's talk first about Sylvia Gaines.  Why should we believe what she said when she came in here?  Well, Sylvia Gaines has nothing to gain from lying.  What's in it for her?  Nothing.  This is her nephew.  Somebody that she was close to as he was growing up, somebody who's her family.  It doesn't benefit her in any way to get him in trouble.  In fact, it actually probably jeopardizes her family.

"[Defense counsel]: Objection, inappropriate.

". . . .

"THE COURT: Let's hear the rest of the argument.

"[Prosecutor]: Jeopardizes her family relationships, deteriorates the family unit – .

"THE COURT: Overruled."

We conclude the prosecutor did not engage in improper vouching. There was evidence that Sylvia had been related to defendant by

18

marriage, having been married to his uncle, and she still
considered defendant her nephew.  The prosecutor's remarks were
proper comment on the evidence and reasonable inferences to be
drawn therefrom.

**2. Vouching for Regence**

The prosecutor argued to the jury that Regence, as the driver of the
car that night, "knew he was facing a lot of time if he didn't tell the
truth.  [¶]  And he told you he decided he didn't want to go away
for life for something that wasn't his doing.  Those were his exact
words: 'I don't want to go for life for something that wasn't my
doing.'

"He wasn't responsible for the shooting, personally.  He wasn't
responsible for having the gun and he didn't want to go down on
all of it because of something the defendant did, so he decided that
he would come in here and tell the truth and he got a benefit for it.
He knew that he would not be able to make that deal if he was
lying.  He told you what he thought his role was is [sic] to come in
here and tell the whole story about what happened that night to the
best of his knowledge.  That's exactly what he did.

"And if he came in here and lied, pointed at the defendant when it
wasn't the defendant that did this, he loses his deal.  He actually
has an incentive not to lie because if he does lie, he can't have the
benefit of that contract he made."

First, defendant has forfeited this particular claim of vouching by
failing to make a timely objection and request an admonition to
cure any potential harm.  (*People v. Price* (1991) 1 Cal.4th 324,
447; *People v. Bonilla, supra*, 41 Cal.4th at p. 336 [to preserve
claim of prosecutorial misconduct during argument, defendant
must contemporaneously object and seek a jury admonition].)
Although defendant argues an admonition could not cure the
improper vouching once the jury heard the prosecutor believed the
witness, we disagree.  In this case, as distinguished from *People v.
Schiers, supra*, 19 Cal.App.3d 102, cited by defendant, the
prosecutor did not suggest she had any independent evidence of
the witness's truthfulness.[9]  No authority suggests the futility of
seeking an admonition in the instant case.

Second, it was proper for the jury to know that Regence had
entered a negotiated plea which required him to testify truthfully at

---

[9]  In *People v. Schiers, supra*, 19 Cal.App.3d 102, a police officer testified at trial that the
defendant voluntarily took a lie detector test and was told he failed the test.  (*Id.* at pp. 108, 112.)
That case did not concern bolstering of the prosecutor's own witness, but rather the purposeful
eliciting of inadmissible evidence by the prosecutor.

1       defendant's trial.  (*Bonilla, supra*, 41 Cal.4th at p. 337.)  "When an
      accomplice testifies for the prosecution, full disclosure of any
2       agreement affecting the witness is required to ensure that the jury
      has a complete picture of the factors affecting the witness's
3       credibility."  (*Ibid.*)  The argument regarding his credibility
      contained reasonable inferences from the evidence and testimony.
4       There was no vouching.

5       Finally, defendant adds that his trial counsel rendered ineffective
      assistance by failing to object to the prosecutor's argument.
6       Defendant provides no analysis.  None, however, is required, as we
      have already explained that the prosecutor's conduct was not
7       objectionable.

8       We conclude defendant has failed to show grounds for reversal
      based on prosecutorial misconduct.

9

10 Opinion at 13-22.

11      A criminal defendant's due process rights are violated when a prosecutor's misconduct

12 renders a trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986);

13 *Sassounian v. Roe*, 230 F.3d 1097, 1106 (9th Cir. 2000).  However,  misconduct does not, per se,

14 violate a petitioner's constitutional rights.  *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993)

15 (citing *Darden*, 477 U.S. at 181, and *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir.

16 1987)).  "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is

17 the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209,

18 219 (1982).

19      Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire

20 proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness

21 as to make the resulting conviction a denial of due process.'"  *Johnson v. Sublett*, 63 F.3d 926,

22 929 (9th Cir. 1995) (citation omitted).  *See also Greer v. Miller*, 483 U.S. 756, 765 (1987);

23 *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Turner v Calderon*, 281 F.3d 851, 868

24 (9th Cir. 2002).  Relief on such claims is limited to cases in which the petitioner can establish

25 that prosecutorial misconduct resulted in actual prejudice.  *Johnson*, 63 F.3d at 930 (citing

26 *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)); *see also Darden*, 477 U.S. at 181-83;

1   *Turner*, 281 F.3d at 868.  Put another way, prosecutorial misconduct violates due process when it

2   has a "substantial and injurious effect or influence in determining the jury's verdict."  *See*

3   *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (quoting *O'Neal v. McAninch*, 513

4   U.S. 432, 443 (1995)).  Finally, it is the petitioner's burden to state facts that point to a real

5   possibility of constitutional error in this regard.  *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th

6   Cir. 1990).

7        It is improper for a prosecutor to vouch for the credibility of a government witness.

8   *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002).  *See also United States v.*

9   *Young*, 470 U.S. 1, 7 n.3 (1985).  "Vouching consists of placing the prestige of the government

10  behind a witness through personal assurances of the witness's veracity, or suggesting that

11  information not presented to the jury supports the witness's testimony."  *United States v.*

12  *Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993).  "Vouching typically involves the prosecution

13  bolstering the testimony of its own witness."  *United States v. Wright*, 625 F.3d 583, 610 (9th

14  Cir. 2010) (quoting *United States v. Nobari*, 574 F.3d 1065, 1078 (9th Cir. 2009)).  Vouching is

15  "especially problematic in cases where the credibility of the witness is crucial."  *Necoechea*, 986

16  F.2d at 1276.  However, in fashioning closing arguments prosecutors are allowed "reasonably

17  wide latitude," *United States v. Birges*, 723 F.2d 666, 671-72 (9th Cir. 1984), and are free to

18  argue "reasonable inferences from the evidence."  *United States v. Gray*, 876 F.2d 1411, 1417

19  (9th Cir. 1989).

20        A violation of a defendant's right to due process also occurs if the government knowingly

21  uses false evidence or fails to correct false testimony.  *Napue v. Illinois* , 360 U.S. 264, 269

22  (1959); *Morales v. Woodford*, 388 F.3d 1159, 1179 (9th Cir. 2004).  "To establish a *Napue*

23  claim, a petitioner must show that '(1) the testimony (or evidence) was actually false, (2) the

24  prosecution knew or should have known that the testimony was actually false, and (3) . . . the

25  false testimony was material.'" *Towery v. Schriro*, 641 F.3d 300, 308 (9th Cir. 2010) (quoting

26  *United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003)).  Mere speculation regarding

1    these factors is insufficient to meet petitioner's burden.  *United States v. Aichele*, 941 F.2d 761,

2    766 (9th Cir. 1991).  A *Napue* violation is material when there is "any reasonable likelihood that

3    the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427

4    U.S. 97, 103 (1976).

5                                    **a.  Sylvia Gaines**

6           Petitioner claims that the prosecutor committed misconduct when she failed to warn

7    Sylvia Gaines not to mention the telephone call from petitioner to Howard Gaines, and when she

8    failed to point out to the trial court, after Sylvia mentioned the phone call, that Sylvia's

9    testimony was not admissible.  This claim fails because there is no evidence the prosecutor knew

10   about the existence or the particulars of the phone call.  On the contrary, the record appears to

11   reflect that Sylvia mentioned the phone call without prompting and that all parties believed the

12   call was made to Sylvia until Sylvia clarified on cross-examination that the call had been made

13   to Howard.  The prosecutor certainly did not commit misconduct in failing to warn Sylvia

14   Gaines about a phone call she knew nothing about, or in failing to advise the trial court that

15   Sylvia's testimony was inadmissible hearsay, when she didn't realize that it was.

16          Nor has petitioner demonstrated that the prosecutor violated *Napue* when she failed to

17   correct knowingly false testimony regarding the telephone call.  Sylvia's direct examination

18   testimony about the phone call was not false – it was simply unclear.  Sylvia later clarified that

19   the telephone call had been made to Howard and not to her, leaving nothing to correct.  Under

20   the circumstances presented here, the prosecutor's failure to prevent Sylvia from mentioning the

21   phone call, or her failure to correct Sylvia's testimony about the call, does not constitute

22   misconduct.  *Cf. Phillips v. Ornoski*, 673 F.3d 1168, 1188 (9th Cir. 2012) (prosecutor committed

23   misconduct and also violated *Napue* when he failed to correct false testimony of prosecution

24   witness that he had not entered into a plea bargain with prosecutor, and then affirmatively misled

25   the jury with respect to the existence of such a bargain).

26   ////

                                         22

1    In any event, as noted by the California Court of Appeal, petitioner's jury was instructed

2    to disregard Sylvia's testimony about petitioner's phone call to Howard.  This court must

3    presume that the jurors followed this instruction.  *Kansas v. Marsh*, 548 U.S. 163 (2006);

4    *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (applying "the almost invariable assumption of

5    the law that jurors follow their instructions"); *Fields v. Brown*, 503 F.3d 755, 782 (9th Cir.

6    2007).  In light of this jury instruction, petitioner cannot show a reasonable likelihood that

7    Sylvia's testimony about the call affected the verdict of the jury.

8    Petitioner also claims that the prosecutor committed misconduct by vouching for the

9    testimony of Sylvia Gaines.  As set forth above, the prosecutor argued that Sylvia Gaines had

10   nothing to gain by lying and that lying would "jeopardize her family relationships" with no

11   benefit to her.  This court agrees with the California Court of Appeal that this argument was a

12   fair comment on evidence already before the jury that Sylvia had been related to petitioner by

13   marriage and still considered him to be part of her family.  In making these remarks, the

14   prosecutor did not express her personal belief in the veracity of Sylvia Gaines' testimony or

15   indicate that information not presented to the jury supported that testimony.  Accordingly, her

16   remarks did not constitute improper vouching.

17                              **b. Regence Gaines**

18   Petitioner also claims that the prosecutor improperly vouched for the trial testimony of

19   Regence Gaines when she stated during her closing argument that Regence was required to tell

20   the truth at trial in order to get the benefit of his plea agreement with the government.  Pet. at 12.

21   As set forth above, the California Court of Appeal concluded that petitioner forfeited this claim

22   by failing to make a contemporaneous objection to the prosecutor's statements about Regence

23   Gaines.  Respondent argues that the state court's finding of waiver constitutes a state procedural

24   bar precluding this court from addressing the merits of this claim.  Dckt. No. 10 (Answer) at 31-

25   32.

26   ////

1          State courts may decline to review a claim based on a procedural default. *Wainwright v.*

2    *Sykes*, 433 U.S. 72 (1977).  As a general rule, a federal habeas court "'will not review a question

3    of federal law decided by a state court if the decision of that court rests on a state law ground that

4    is independent of the federal question and adequate to support the judgment.'"  *Calderon v.*

5    *United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v.*

6    *Thompson*, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if it is "firmly

7    established and regularly followed."  *Id.*  (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991));

8    *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law

9    ground for decision must be well-established and consistently applied.")  The state rule must also

10   be "independent" in that it is not "interwoven with the federal law."  *Park v. California*, 202

11   F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983).

12   Even if the state rule is independent and adequate, the claims may be heard if the petitioner can

13   show:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal

14   law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.

15   *Coleman*, 501 U.S. at 749-50.

16          Respondent has met his burden of adequately pleading an independent and adequate state

17   procedural ground as an affirmative defense.  *See Bennett*, 322 F.3d at 586.  Petitioner does not

18   deny that his trial counsel did not raise a contemporaneous objection to the prosecutor's closing

19   remarks about Regence Gaines.  Although the state appellate court addressed petitioner's

20   vouching claim on the merits, it also expressly held that the claim was waived on appeal because

21   of defense counsel's failure to object.  Petitioner has failed to meet his burden of asserting

22   specific factual allegations that demonstrate the inadequacy of California's contemporaneous-

23   objection rule as unclear, inconsistently applied or not well-established, either as a general rule

24   or as applied to him.  *Bennett*  322 F.3d at 586; *Melendez v. Pliler*, 288 F.3d 1120, 1124-26 (9th

25   Cir. 2002).  Petitioner's claim therefore appears to be procedurally barred.  *See Coleman*, 501

26   U.S. at 747; *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Paulino v. Castro*, 371 F.3d 1083,

1   1092-93 (9th Cir. 2004).  Petitioner has also failed to demonstrate that there was cause for his

2   procedural default or that a miscarriage of justice would result absent review of the claim by this

3   court.  *See Coleman*, 501 U.S. at 748; *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).[10]

4   Finally as to this claim, even if were not procedurally barred, it has no merit for the

5   following reasons.  Regence Gaines testified on direct examination that he had entered into a

6   cooperation agreement with the prosecutor in exchange for his truthful testimony.  Reporter's

7   Transcript on Appeal (RT) at 337-40.  Upon questioning by the prosecutor, Gaines told the

8   jurors that, under that agreement, he was required to tell the truth at petitioner's trial.  *Id.*  A

9   prosecutor's questions in this regard is not, per se, improper vouching.  Rather the entire context

10  must be considered.  The Ninth Circuit Court of Appeals has concluded that under certain

11  circumstances "[e]liciting testimony on direct examination that a witness entered into a plea

12  agreement that requires truthful testimony may constitute vouching."  *United States v. Dorsey*,

13  677 F.3d 944, 953 (9th Cir. 2012) (citing *United States v. Wallace*, 848 F.2d 1464, 1474 (9th Cir.

14  1988)).  This is because "[t]hat a plea agreement requires a witness to tell the truth might be

15  argued to suggest that a witness, "who might otherwise seem unreliable, has been compelled by

16  the prosecutor's threats and the government's promises to reveal the bare truth" and that "the

17  prosecutor can verify the witness's testimony and thereby enforce the truthfulness condition of

18

19  ───────────────

    [10]  Ineffective assistance of counsel will establish cause to excuse a procedural default if
    it was "so ineffective as to violate the Federal Constitution."  *Edwards v. Carpenter*, 529 U.S.
20  446,  451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 486–88 (1986)).  However, trial
    counsel's failure here to object to the prosecutor's closing remarks does not rise to the level of a
21  constitutional violation.  As the Ninth Circuit explained in *Necoechea*, "[b]ecause many lawyers
    refrain from objecting during opening statement and closing argument, absent egregious
22  misstatements, the failure to object during closing argument and opening statement is within the
    'wide range' of permissible professional legal conduct."  986 F.2d at 1281.  *See also*
23  *Cunningham v. Wong*, ___ F.3d ___, 2013 WL 69198, **13-14 (9th Cir. 2013) ("Under
    *Necoechea*, [trial counsels') decision not to object to (the prosecutor's) comments (during his
24  closing argument), possibly to avoid highlighting them, was a reasonable strategic decision");
    *United States v. Daas*, 198 F.3d 1167, 1179 (9th Cir. 1999) (trial counsel's failure to object to
25  possible vouching during the prosecutor's closing argument "falls within the range of
    permissible professional conduct of trial counsel").  Here, trial counsel's decision not to object to
26  the prosecutor's brief closing remarks does not establish cause to excuse the procedural default.

its plea agreement." *Id.* However, in another case the Ninth Circuit concluded that eliciting

testimony on direct examination about a plea agreement entered into by the witness in exchange

for truthful testimony does not constitute vouching. *See Necoechea*, 986 F.2d at 1278

("Necoechea next argues that the prosecutor improperly vouched by eliciting testimony

regarding the truthfulness provision on direct examination by asking Gibson if it were part of her

agreement that she "testif[y] truthfully and cooperat[e]," to which she responded yes.  This is not

vouching.  The prosecutor's question does not imply a guaranty of Gibson's truthfulness, refer to

extra-record facts, or reflect a personal opinion).  In the instant case, although the prosecutor

elicited the fact of Regence Gaines' cooperation agreement with the government, she did not

refer to extra-record facts, say (or imply) that she could verify that Regence Gaines was telling

the truth, or express her personal opinion of the truthfulness of Gaines' testimony.

The prosecutor also stated during her closing argument that Regence Gaines would not

get the benefit of his plea bargain if he lied on the witness stand.  The Ninth Circuit has stated

that eliciting testimony on direct examination that a witness' plea agreement would be undone if

the witness lied is a "mild" form of vouching because it implies that "the prosecutor can verify

the witness's testimony and thereby enforce the truthfulness condition of its plea agreement."

*United States v. Brooks*, 508 F.3d 1205, 1210 (9th Cir. 2007).  On the other hand, the Ninth

Circuit has concluded that a prosecutor's statements in closing argument that witnesses could be

prosecuted for perjury if they were lying did not require reversal where the prosecutor made "no

personal assurances of veracity" and the jury was instructed that its role was to assess the

credibility of witnesses and that it should view the witnesses' testimony with caution in light of

the possibility that they would receive benefits from the government.  *Daas*, 198 F.3d at 1179.

*See also United States v. Ortiz*, 362 F.3d 1274, 1278-79 (9th Cir. 2004) (holding that it was *not*

improper to elicit on direct examination a witness' obligation through a plea agreement to tell the

truth, it *was* improper vouching to suggest that the prosecutor or the court would know whether

the witness gave truthful testimony as promised in the plea agreement, but finding no prejudice

26

where other testimony corroborated the testimony of the witness and the jury was instructed to

view the witness' testimony with caution because the witness had received favorable treatment

from the government); *United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994) (improper

vouching occurred when prosecutor stated in closing argument that witness testifying under a

plea agreement was in jeopardy if the court or government did not find the testimony truthful;

vouching was prejudicial where proof of defendant's guilt was not overwhelming, he objected to

the improper remarks, and the court failed to cure the error with an admonishment to the jury).

In light of the varied caselaw on the issue of vouching, the Ninth Circuit has acknowledged that:

> we have no bright-line rule about when vouching will result in
> reversal. Rather, we consider a number of factors including: the
> form of vouching; how much the vouching implies that the
> prosecutor has extra-record knowledge of or the capacity to
> monitor the witness's truthfulness; any inference that the court is
> monitoring the witness's veracity; the degree of personal opinion
> asserted; the timing of the vouching; the extent to which the
> witness's credibility was attacked; the specificity and timing of a
> curative instruction; the importance of the witness's testimony and
> the vouching to the case overall.

*Necoechea*, 986 F.2d at 1278.

        In this case, even if the prosecutor's closing statements or direct examination questions

constituted impermissible vouching, they did not, "when taken in the context of the entire trial,

materially affect[ ] the jury's ability to judge the evidence impartially." *United States v. Parker*,

241 F.3d 1114, 1120 (9th Cir. 2001). The prosecutor's comments and questions with respect to

Regence Gaines' plea agreement with the government were brief. *Cf. Cunningham*, 2013 WL

69198 at *14 (no prejudice from defense counsel's failure to object to remarks made by

prosecutor during her closing argument because "the comments were a single paragraph of a

twenty-page argument and the trial judge explained to the jury that closing arguments are not

evidence"). The prosecutor did not express her personal belief in the truthfulness of Gaines'

testimony. She did not imply that she had extra-record knowledge.

////

Further, petitioner's jurors were instructed that they alone must judge the credibility or believability of the witnesses, that they were responsible to decide "what the facts are in this case," and that, in evaluating a witness' credibility, they should consider whether the witness was "promised leniency in exchange for his or her testimony."  Clerk's Transcript on Appeal (CT) at 389, 393, 394.  The jurors were also instructed that "nothing that the attorneys say is evidence" and that "in their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence."  *Id.* at 389.  In light of these instructions, the jurors could not reasonably have understood the challenged argument to relieve them of the obligation to determine for themselves the issue of Regence Gaines' credibility.  *See Brooks*, 508 F.3d at 1211 (eliciting testimony that court would determine witness' truthfulness harmless, where, among other things, court instructed jury to view witness' testimony with caution); *Ortiz*, 362 F.3d at 1279 (same); *Daas*, 198 F.3d at 1179 (informing jury that witnesses would be prosecuted for perjury if they were not telling the truth did not constitute "plain error," where jury was instructed, inter alia, that it was jury's role to assess the credibility of witnesses and that it should view witnesses' testimony with caution in light of the possibility that they would receive benefits from the government); *Necoechea*, 986 F.2d at 1280 (general instruction that jury should weigh with "greater care" the testimony of "a coconspirator or accomplice who provides evidence for immunity from punishment or for personal advantage or vindication" sufficient to cure "mild" vouching);  *Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991) (holding, on habeas review, that counsel's failure to object to improper argument at trial did not prejudice petitioner where other evidence supported a guilty verdict and the jury was told closing argument was not evidence); *United States v. Shaw*, 829 F.2d 714, 717-18 (9th Cir. 1987) (informing the jury that plea agreement provided that as long as witness was truthful prosecution would "present his truthful cooperation" to local authorities did not warrant reversal where court instructed jury to view witness' testimony with caution, both as an accomplice and as the beneficiary of a plea bargain, thus informing jury that issue of witness' credibility "was wholly open for the jury to

1   decide").

2    This court also notes that, although Regence Gaines was an important witness for the

3   prosecution with respect to some of the charges against petitioner, his testimony did not provide

4   any evidence on the charge against petitioner of making criminal threats.  Sylvia Gaines'

5   testimony alone provided evidence of petitioner's statements to her on the night of the shooting

6   and whether she interpreted those statements as a threat.  Although petitioner was acquitted of

7   some of the charges against him, the evidence against him on the charge of making a criminal

8   threat was provided by the testimony of Sylvia Gaines.  With respect to that charge, this was not

9   a close case, and Regence Gaines' testimony would not have made the difference between

10   conviction and acquittal.

11    Finally, the court notes that, during her cross-examination of Regence Gaines,

12   petitioner's counsel thoroughly explored the subject of Gaines' plea agreement with the

13   government, including the fact that he was required to testify consistently with the prosecutor's

14   theory of the case or he would be in breach of the agreement and would lose the benefit of the

15   deal.  RT at 343-46.  The Ninth Circuit has been clear that "referring to a plea agreement's

16   mandate to be truthful does not constitute vouching for a witness if such references are 'made in

17   response to an attack on the witness's credibility because of his plea bargain,' including an attack

18   in defense counsel's opening statement."  *Dorsey*, 677 F.3d at 953 (quoting *United States v.*

19   *Monroe*, 943 F.2d 1007, 1013-14 (9th Cir. 1991)); *see also United States v. Kats*, 871 F.2d 105,

20   107 (9th Cir. 1989).  The Ninth Circuit has also indicated that where it was clear at the time of

21   the alleged vouching that the defense would dispute the witness' credibility, the timing of the

22   prosecutor's challenged statements is not critical.  *See Brooks*, 508 F.3d at 1211; *Necoechea*, 986

23   F.2d at 1278 & n.2; *Shaw*, 829 F.2d at 717.  Here, at the time of Regence Gaines' direct

24   examination it may well have been clear that the defense would challenge Gaines' credibility

25   with his plea agreement, as the defense later did.  Further, at the time of the prosecutor's closing

26   argument, the jurors were already aware that Regence Gaines had entered into a plea agreement

with the government pursuant to which he received a significantly reduced sentence in exchange

for his truthful testimony.  This lessens the possibility of prejudice from the prosecutor's

remarks.  *See United States v. Wilkes*, 662 F.3d 524, 541 (9th Cir. 2011) ("the government's

statement in closing argument that [a witness'] immunity obligated him to tell the truth was

information the jury had already heard when defense counsel cross-examined Wade about his

immunity and Wade responded that it was 'only predicated on the truth.'").

     After a thorough review of the record, this court concludes that any possible misconduct

by the prosecutor in terms of vouching for the credibility of Regence Gaines did not render

petitioner's trial fundamentally unfair.  The decision of the California Court of Appeal rejecting

petitioner's claim that the prosecutor improperly vouched for the credibility of Regence Gaines

is not contrary to or an unreasonable application of United States Supreme Court authority, and

is not based on an unreasonable determination of the facts of this case.  Accordingly, petitioner is

not entitled to relief on this claim.

     Nor is petitioner entitled to relief on his claim that he was denied effective assistance of

counsel because his trial counsel failed to object to the prosecutor's remarks during closing

argument.  His counsel's decision not to object falls within the range of permissible professional

conduct.  *See Necoechea*, 986 F.2d at 1281; *Daas*, 198 F.3d at 1179.

### 3.  Cumulative Error

     In his final ground for relief, petitioner claims that the cumulative effect of the errors at

his trial violated his right to due process. Pet. at 14-15; Dckt. No. 14 (Traverse) at 32.  The

California Court of Appeal denied this claim, reasoning as follows:

> We also reject defendant's claim that the cumulative impact of any
> errors made at trial prejudiced him.  Whether considered
> individually or for cumulative effect, no error occurred which
> affected the trial process or deprived defendant of his
> constitutional rights. (People v. Sanders (1995) 11 Cal.4th 475,
> 565.)

Opinion at 22.

1    The Ninth Circuit has concluded that under clearly established United States Supreme

2    Court precedent, the combined effect of multiple trial errors may give rise to a due process

3    violation if it renders a trial fundamentally unfair, even where each error considered individually

4    would not require reversal. *Parle v. Runnels*, 505 F.3d 922, 927 (9th. Cir. 2007) (citing

5    *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers v. Mississippi*, 410 U.S.

6    284, 290 (1973)). *See also Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) (if no error of

7    constitutional magnitude occurred at trial, "no cumulative prejudice is possible"). "The

8    fundamental question in determining whether the combined effect of trial errors violated a

9    defendant's due process rights is whether the errors rendered the criminal defense 'far less

10   persuasive,' *Chambers*, 410 U.S. at 294, and thereby had a 'substantial and injurious effect or

11   influence' on the jury's verdict." *Parle*, 505 F.3d at 927 (quoting *Brecht*, 507 U.S. at 637).

12   This court has addressed each of petitioner's claims raised in the instant petition and has

13   concluded that no error of constitutional magnitude occurred at his trial in state court. This court

14   also concludes that the alleged errors, even when considered together, did not render petitioner's

15   defense "far less persuasive," nor did they have a "substantial and injurious effect or influence

16   on the jury's verdict." Accordingly, petitioner is not entitled to relief on his claim of cumulative

17   error.

18   **III.  Conclusion**

19   For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

20   application for a writ of habeas corpus be denied.

21   These findings and recommendations are submitted to the United States District Judge

22   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

23   after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

26   within the specified time may waive the right to appeal the District Court's order. *Turner v.*

*Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  May 14, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE